JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America, Ex Rel. John Doe | Eli Lilly & Company |

| (b) County of Residence of First Listed Plaintiff _____ <br> (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant **Marion County** <br> (IN U.S. PLAINTIFF CASES ONLY) <br> NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE <br> LAND INVOLVED. |
|---|---|
| (c) Attorney's (Firm Name, Address, and Telephone Number) <br> Michael M. Mustokoff <br> Duane Morris LLP <br> 30 South 17th Street <br> Philadelphia, PA 19103-4196 <br> Phone: 215.979.1810 | Attorneys (If Known) |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question (U.S. Government Not a Party)

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 151 Medicare Act <br> ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholders' Suits <br> ☐ 190 Other Contract <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | **PERSONAL INJURY** <br> ☐ 310 Airplane <br> ☐ 315 Airplane Product Liability <br> ☐ 320 Assault, Libel & Slander <br> ☐ 330 Federal Employers' Liability <br> ☐ 340 Marine <br> ☐ 345 Marine Product Liability <br> ☐ 350 Motor Vehicle <br> ☐ 355 Motor Vehicle Product Liability <br> ☐ 360 Other Personal Injury | **PERSONAL INJURY** <br> ☐ 362 Personal Injury— Med. Malpractice <br> ☐ 365 Personal Injury— Product Liability <br> ☐ 368 Asbestos Personal Injury Product Liability <br> **PERSONAL PROPERTY** <br> ☐ 370 Other Fraud <br> ☐ 371 Truth in Lending <br> ☐ 380 Other Personal Property Damage <br> ☐ 385 Property Damage Product Liability | ☐ 610 Agriculture <br> ☐ 620 Other Food & Drug <br> ☐ 625 Drug Related Seizure of Property 21 USC 881 <br> ☐ 630 Liquor Laws <br> ☐ 640 R.R. & Truck <br> ☐ 650 Airline Regs. <br> ☐ 660 Occupational Safety/Health <br> ☐ 690 Other | ☐ 422 Appeal 28 USC 158 <br> ☐ 423 Withdrawal 28 USC 157 <br> **PROPERTY RIGHTS** <br> ☐ 820 Copyrights <br> ☐ 830 Patent <br> ☐ 840 Trademark | ☐ 400 State Reapportionment <br> ☐ 410 Antitrust <br> ☐ 430 Banks and Banking <br> ☐ 450 Commerce <br> ☐ 460 Deportation <br> ☐ 470 Racketeer Influenced and Corrupt Organizations <br> ☐ 480 Consumer Credit <br> ☐ 490 Cable/Sat TV <br> ☐ 810 Selective Service <br> ☐ 850 Securities/Commodities/ Exchange <br> ☐ 875 Customer Challenge 12 USC 3410 <br> ☒ 890 Other Statutory Actions <br> ☐ 891 Agricultural Acts |
| **REAL PROPERTY** <br> ☐ 210 Land Condemnation <br> ☐ 220 Foreclosure <br> ☐ 230 Rent Lease & Ejectment <br> ☐ 240 Torts to Land <br> ☐ 245 Tort Product Liability <br> ☐ 290 All Other Real Property | **CIVIL RIGHTS** <br> ☐ 441 Voting <br> ☐ 442 Employment <br> ☐ 443 Housing/ Accommodations <br> ☐ 444 Welfare <br> ☐ 445 Amer. w/Disabilities - Employment <br> ☐ 446 Amer. w/Disabilities - Other <br> ☐ 440 Other Civil Rights | **PRISONER PETITIONS** <br> ☐ 510 Motions to Vacate Sentence <br> **Habeas Corpus:** <br> ☐ 530 General <br> ☐ 535 Death Penalty <br> ☐ 540 Mandamus & Other <br> ☐ 550 Civil Rights <br> ☐ 555 Prison Condition | **LABOR** <br> ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Mgmt. Relations <br> ☐ 730 Labor/Mgmt.Reporting & Disclosure Act <br> ☐ 740 Railway Labor Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Empl. Ret. Inc. Security Act <br> **IMMIGRATION** <br> ☐ 462 Naturalization Application <br> ☐ 463 Habeas Corpus – Alien Detainee <br> ☐ 465 Other Immigration Actions | **SOCIAL SECURITY** <br> ☐ 861 HIA (1395ff) <br> ☐ 862 Black Lung (923) <br> ☐ 863 DIWC/DIWW (405(g)) <br> ☐ 864 SSID Title XVI <br> ☐ 865 RSI (405(g)) <br> **FEDERAL TAX SUITS** <br> ☐ 870 Taxes (U.S. Plaintiff or Defendant) <br> ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 892 Economic Stabilization Act <br> ☐ 893 Environmental Matters <br> ☐ 894 Energy Allocation Act <br> ☐ 895 Freedom of Information Act <br> ☐ 900 Appeal of Fee Determination Under Equal Access to Justice <br> ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
False Claims Act, 31 U.S.C. § 3729 et. seq.

Brief description of cause:
False Claims against the United States and the states named in the Complaint.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____  DOCKET NUMBER _____

DATE May 1, 2009

SIGNATURE OF ATTORNEY OF RECORD
*Michael M. Mustokoff*

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

American LegalNet, Inc.
www.FormsWorkflow.com

**MSG**    IN THE UNITED STATES DISTRICT COURT    COPY
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, STATE OF CALIFORNIA, STATE OF DELAWARE, DISTRICT OF COLUMBIA, STATE OF FLORIDA, STATE OF HAWAII, STATE OF ILLINOIS, STATE OF LOUISIANA, COMMONWEALTH OF MASSACHUSETTS, STATE OF NEVADA, STATE OF TENNESSEE, STATE OF TEXAS, COMMONWEALTH OF VIRGINIA, STATE OF GEORGIA, STATE OF INDIANA, STATE OF MICHIGAN, STATE OF MONTANA, STATE OF NEW HAMPSHIRE, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF NEW JERSEY,  STATE OF OKLAHOMA, STATE OF RHODE ISLAND, STATE OF WISCONSIN, EX REL. JOHN DOE | : : : : : : : : : : : : : : : : : : : : : : : : | CIVIL ACTION NO. **09 ‑ 1863** |
| Plaintiff, | : : | *FILED IN CAMERA AND UNDER SEAL* |
| v. | : : : : | *JURY TRIAL DEMANDED* |
| ELI LILLY & COMPANY Lilly Corporate Center Indianapolis, Indiana, | : : : : | |
| Defendant. | : : | |

**COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER
THE *QUI TAM* PROVISIONS OF THE FEDERAL FALSE CLAIMS ACT AND
SIMILAR STATE PROVISIONS**

## I.   JURISDICTION AND VENUE

1.   This is an action to recover damages and civil penalties on behalf of the United States of America and several individual states arising from Defendant Eli Lilly & Company's ("Lilly") conduct in causing the filing of false claims to be presented under the Federal Medicare, Medicaid, and CHAMPUS Programs.

2.   Medicare is a federally funded health insurance program primarily for the elderly. Medicaid is a state and federal assistance program to provide payment of medical expenses for low income patients.  The Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS") is a program of medical insurance benefits provided by the federal government to individuals with family affiliations to the military services.

3.   These *qui tam* claims arise under the provisions of the False Claims Act, 31 U.S.C. § 3729, et. seq.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732 which specifically confer jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 & 3730.

4.   Personal jurisdiction and venue for this action are predicated on 31 U.S.C. § 3732(a) which provides: "any action brought under § 3730 may be brought in any judicial district in which the defendant, or in the case of multiple defendants any one defendant, can be found, resides, transacts business or in which any act proscribed by § 3729 occurred." Defendant Lilly transacts substantial business in the Eastern District of Pennsylvania.

5.   This Court also has supplemental jurisdiction over the claims brought pursuant to the California, Delaware, District of Columbia, Florida, Hawaii, Illinois, Louisiana, Massachusetts, Nevada, Tennessee, Texas, Virginia, Georgia, Indiana, Michigan, Montana, New Hampshire, New Mexico, New York, New Jersey, Oklahoma, Rhode Island and Wisconsin *qui*

2

*tam* statutes pursuant to 28 U.S.C. § 1367 which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

6.      Under the False Claims Act, this Complaint is to be filed *in camera* and remain under seal for a period of at least 60 days and shall not be served on the defendant until the Court so orders.  The government may elect to intervene and proceed with the action within 60 days after it receives both the Complaint and the material evidence and information.

## II.    **PARTIES**

7.      *Qui tam* Plaintiff John Doe ("Relator") is a citizen and resident of the state of California.  The Relator brings this action on behalf of the United States of America.

8.      Simultaneously with the filing of this Complaint, Relator has filed a Motion for Leave to Proceed Under a Fictitious Name.

9.      The Relator is a present employee of Eli Lilly.

**REDACTED**

10.     Simultaneously with the filing of this Complaint as required under the False Claims Act, the Relator has provided to the Attorney General of the United States, the United States Attorney for the Eastern District of Pennsylvania and the State Attorneys General identified in this Complaint, a statement of all material evidence and information related to the Complaint.  This disclosure statement supports the existence of false claims by Lilly in the Medicare, Medicaid and CHAMPUS Programs.

3

11.     Defendant Lilly is a corporation incorporated under the laws of Indiana, with its principal place of business in Indianapolis, Indiana.

## III.     FACTUAL ALLEGATIONS

### A.     Lilly's History of Engaging in the Illegal Practice of Off-label Marketing of its Pharmaceutical Products

12.     Off-label marketing is a practice whereby a pharmaceutical company promotes a drug for the treatment of symptoms and conditions other than those in its Federal Drug Agency ("FDA") approved indication.

13.     A drug achieves an approved indication only after vigorous FDA review of tests and studies demonstrating the drug's safety and efficacy at a particular dosage.  Restrictions can also be placed on patient populations so that the use is limited to those for whom the drug is considered both safe and effective.

14.     Since 1999 and up to January 2009, Lilly has actively engaged in the practice of off-label marketing, often heedless of FDA indications.

15.     In February, 2006, Lilly pled guilty to the crime of misbranding, 21 U.S.C. §§ 331(a), 333(a)(1) and 352(f)(1) arising from its illegal off-label sales of the drug Evista.  Lilly promoted Evista, an FDA approved drug only for osteoporosis, as a drug to be used for the prevention of breast cancer and reducing the risk of cardiovascular disease.  Lilly paid the federal government $36 million in criminal fines, penalties and civil settlement.

16.     In January 2009, Lilly pled guilty again to the crime of misbranding.  In that guilty plea, Lilly admitted that during the period from 1999 through December 31, 2005, Lilly promoted its drug Zyprexa, approved by the FDA only for the treatment of bipolar mania I and schizophrenia, as a drug to be used in the treatment of anxiety, depression, irritability and other mood disorders and conditions.

4

17.    At the same time, Lilly settled federal and state claims of off-label marketing of Zyprexa and the federal crime of misbranding regarding Zyprexa for $1.42 billion dollars.

**B.    Lilly's Management Actively Promotes Off-label Marketing Through a System of Incentive Bonuses and Sales Representative Evaluations**

18.    Each Lilly sales representative is evaluated on the basis of his/her ability to perform against a management assigned goal based upon a basket of drugs which management determines to be an actual or potential competitor of a Lilly drug.

19.    Many of the drugs included in the competitor basket are FDA approved for symptoms or disorders different from the FDA approved indications for the Lilly drug.

20.    Members of the Lilly neuroscience sales group selling Zyprexa and Symbyax, (each an atypical antipsychotic), were evaluated against a basket of competitor drugs that included not only other atypical antipsychotics, but also various mood stabilizers and similar drugs which were FDA approved for symptoms and mood disorders, that were not FDA approved, for Zyprexa and Symbyax. (See chart attached as Exhibit "A").

21.    Cymbalta is FDA approved for: Diabetic Peripheral Neuropathic Pain ("DPNP"), major depression disorder ("MDD"), general anxiety disorder ("GAD") and fibromyalgia. Nevertheless, members of the Lilly neuroscience group selling Cymbalta were evaluated against a basket of drugs approved by the FDA for the general treatment of pain and other off-label indications. Members of the Lilly Osteoporosis group were directed to sell Cymbalta symptom based for the treatment of pain. Members of the Lilly Cardiovascular group were directed to sell Cymbalta symptom based for the treatment of depression.

22.    Strattera is FDA approved only for attention deficit hyperactivity disorder ("ADHD"). Members of the Lilly sales force were instructed and encouraged to market Strattera to physicians to treat those individuals "vulnerable" to certain symptoms associated with ADHD,

5

such as inattention and impulsivity. Because Strattera is not FDA approved for individuals vulnerable to symptoms associated with ADHD, such marketing practices amount to off-label marketing.

23.     Members of the sales force were also encouraged to suggest the use of Strattera in combination with other stimulants outside any approved FDA indication. The sales force was also told to reference a medical letter regarding a combination of Strattera with other stimulants to give credence to their sales efforts.

**C.      Off-label Promotion of Zyprexa since January 1, 2006.**

24.     Zyprexa continues to be approved by the FDA for the indications limited to schizophrenia and bipolar I mania. Neither of these indications is normally seen by primary care physicians who usually refer such patients to psychiatrists whose training and experience are considered necessary for the responsible treatment of these conditions.

25.     Zyprexa is not approved for the treatment of children under 18 or the elderly.

26.     Despite having knowledge of the federal investigation of its off-label marketing activity as to Zyprexa as early as May, 2004, Lilly's sales force continued to promote and were encouraged by Lilly to promote the symptom based off-label  sale of that drug to primary care physicians and child psychiatrists.

27.     In January 2006, a primary care sales force unit was set up in the neuroscience sales division. Sales representatives focused attention on primary care physicians treating patients in nursing homes with dementia and other related problems and primary care doctors treating resistant depression. Zyprexa is not FDA approved for either dementia or resistant depression.

28.     Included in Lilly's competitor basket for Zyprexa is the drug, Depakote, used in the treatment of seizures, bipolarity, migraines, each a condition for which Zyprexa is clearly not

6

FDA approved. Migraines and seizures are conditions routinely treated by primary care physicians.

29.     Also included in the Zyprexa competitor drug basket is Lilly's drug Symbyax, which is indicated for bipolar depression.

30.     Symbyax was approved for the treatment of bipolar depression in December, 2003.

31.     The inclusion of Symbyax and Zyprexa in the same basket of competitors, despite the difference in the indications for the two drugs, evidences Lilly's intention to disregard those differences in its marketing of the two drugs.

32.     Despite having knowledge of the federal investigation of its off-label marketing of Zyprexa to primary care physicians and child psychiatrists as early as May, 2004, Lilly's management continued to impose the very same competitive basket sales quotas and expectations on its sales representatives regarding Zyprexa, requiring and resulting in the off-label marketing and resulting sales of that drug.

33.     Promotions, sales bonuses and evaluations continued to be based upon the very same measurements achieved through previous off-label marketing results. Sales representatives were required/expected to see the very same primary care physicians and child psychiatrists with whom they had always off-label marketed Zyprexa, requiring and resulting in the off-label sales of that drug.

34.     Lilly manufactures Zyprexa in a sub lingual form called Zydis. Despite the same FDA limited approved indications, Zydis is marketed off-label principally to primary care physicians and psychiatrists treating elderly patients resistant to swallowing pills.

7

35.     Neither Zyprexa nor Zydis has been indicated for treatment of the elderly for bipolar mania.

36.     Despite its knowledge of the investigation in 2004, Lilly nonetheless continued to advocate and encourage off-label marketing of Zyprexa up to the finalization of its January 2009 civil and criminal settlement with the government.  That settlement however only covered the period up through December 31, 2005.  In January 2009, just as settlement of the government's misbranding and off-label marketing claims for Zyprexa were about to be made public, Lilly's management gave its **first direction** to the sales force to cease selling Zyprexa off-label as a general "bipolar" drug.  FDA's approved indication is only for bipolar I mania.

37.     Attached as Exhibit "B" to this Complaint is just such a direction.

> And the reason I say that is we now have to say bipolar I in our targeted patient when we talk about that.  **Before, we were allowed to say bipolar; now its bipolar I** and I think the one we are going to do for the management team may be the one you want to roll out because primary care doctors may say "well, what's the difference between I? and II" and I think it's a good knowledge base for all of us to learn that.  So, but that's your call if you want to roll out something different.

> In the same conversation, the same supervisor states:

> What you do with your own district is up to you, but I would recommend at least for Zyprexa to go through the bipolar I versus bipolar II, and the reason I say that is one of our number one missed areas, and, secondly, we now have to, in our patient setup, say bipolar I.  Now we need to make sure everybody understands the difference between bipolar I, bipolar II, and some of the other, actually, things that can happen.  In terms of the CIA corporate agreement that **we are now having to comply with Zyprexa,** Grady will be talking about that on stage, the first part of the general session."

38.     The continuation of Lilly's Zyprexa primary care off-label marketing strategy is evidenced in its use of sample drugs provided to primary care physicians.  The indicated <u>starting dose</u> for Zyprexa is 10 to 15 milligrams daily.  Samples provided to the physicians, however,

8

were primarily 2.5 to 5 milligrams. The smaller dosage is used as an introduction to the off-label treatment of non-indicated symptoms such as depression and anxiety.

      **D.**     **<u>Symbyax</u>**

     39.    Symbyax is a Lilly drug indicated only for bipolar depression.

     40.    Bipolar depression is a mental disorder treated by psychiatrists whose training and experience are considered necessary for the responsible diagnosis and treatment of these conditions.

     41.    Lilly's internal documents provided to its sales force regarding Symbyax state, "the brand strategy for Symbyax, with bipolar depression, remains focused on **expanding** use in the **primary care setting** and maintaining current prescribers in the psychiatry and account settings. Attached as Exhibit "C".

     42.    Symbyax and Zyprexa appear to be viewed as direct competitors as depicted in Lilly's competitive drug chart. (Exhibit "A") However, FDA approved indications for the two drugs are different. Moreover, neither drug is FDA approved for the same indications as Depakote, also included in the same competitive basket as Symbyax and Zyprexa. Depakote is indicated for bipolar disorder, as well as seizures and simple and complex migraines.

     43.    To further its expansively aggressive promotion to primary care physicians, Lilly retained a contract sales force, NovaQuest PCP specifically to focus promotion of Symbyax in the primary care setting.

     44.    Lilly's sales materials regarding, "customer targetings" [for primary care physicians] specifically state:

> Target a group of ten Symbyax CATS [Customer Account Targets] target physicians that currently do not consider bipolar depression in their depressed patient population.

9

45.     Lilly directed its sales personnel to instruct physicians as to what the <u>sales representative</u> considered to be a diagnosis of bipolar depression.

46.     By giving such directions, Lilly engages in the off-label promotion of Symbyax to doctors not trained in the diagnosis of bipolar depression.  In addition by equating Symbyax to non-Lilly drugs that have far broader FDA approved indications, Lilly is engaging in the off-label promotion of Symbyax.

    **E.     Cymbalta**

47.     Cymbalta is presently indicated for DPNP, MDD, GAD and fibromyalgia.

48.     Lilly launched Cymbalta for the treatment of MDD in August, 2004.

49.     Lilly launched Cymbalta for the treatment of DPNP in September, 2004.

50.     Cymbalta was not approved for the treatment of fibromyalgia until June, 2008.

51.     From its initial launch in 2004, Lilly's sales representatives promoted Cymbalta for the treatment of symptoms such as burning or chronic widespread pain, despite the absence of FDA approved fibromyalgia or chronic pain indications.

52.     MDD and GAD appear in DSM-IV diagnostic criteria.  They are serious mental diseases most commonly treated by psychiatrists.

53.     DPNP is somatic pain often associated with diabetes and most commonly treated by endocrinologists.

54.     Lilly sales personnel are currently promoting the off-label use of Cymbalta for treatment of general pain and depression.  Lilly sales representatives are also promoting Cymbalta off-label to child psychiatrists. Cymbalta is not FDA approved for patients under the age of 18.

10

55.    Included in Lilly's Cymbalta competitive basket are such drugs as Prozac, Zoloft, and Paxil, drugs indicated for social anxiety, panic, PTSD, conditions routinely treated by general practitioners.

56.    Attached as Exhibit "D" is a page from a March, 2009 workbook provided to Lilly's sales force. It notes, "Key Changes to the Previous Sales Aid". It refers to data that has been removed from Sales Aid/IVA. [Interactive Visual Aid].

57.    In April, 2009, Lilly issued a revised "Sales Director/Manager Facilitator's Guide, attached as Exhibit E.

58.    The alleged purpose of this Guide was to state that "as a result of new data analysis, the focus of our promotion and core sales pieces have changed". Instead of promotion for painful somatic symptoms, the sales force was to sell Cymbalta for MDD and risk of relapse.

59.    The actual reason for the revised sales pieces was to provide a reason to withdraw off-label marketing pieces that stressed, "vague aches; loss of interest; sadness and anxiousness", as opposed to Cymbalta's indications for MDD. See Exhibit "F" attached sales piece.

60.    As stated in the Facilitator's Guide, the new IVA DOES NOT (emphasis in the original) have any of the painful physical symptom data.

61.    As stated in the Facilitator's Guide, "The Cymbalta MDD promotional slide kits (core, emotional and painful physical symptoms) are no longer available for use".

62.    As further evidence of Lilly's recognition of its prior off-label sales of Cymbalta for pain, it provided its sales force with an "Opening dialogue to share with customers". Attached as Exhibit "G". That document specifically instructs sales representatives to tell physician customers:

> "You will see a change (emphasis added) in the patient type I will
> be describing today, as one of the areas under consideration

11

revolves around Cymbalta's data in painful physical symptoms. While this process is occurring, I will be sharing data in a patient visit with major depression who is at risk of relapse."

63.     Cymbalta has been openly marketed as a drug for mood disorder. The Premier Rewards program for fiscal 2009 states as a goal, "one combined market for Pain and Mood for all sales forces promoting Cymbalta." In its profile targeting primary care physicians, it describes such off-label symptoms as "aches and pains, loss of interest, sluggish."

64.     The materials distributed by Lilly sales personnel up to April, 2009 promoted the use of Cymbalta in a variety of ways for which there was no supporting data. Lilly's sales aids had claimed, without substantiation, that, unlike Cymbalta, a competing group of antidepressant drugs failed to relieve somatic symptoms.

65.     Lilly's off-label marketing of Cymbalta has been remarkably successful. On April 20, 2009, Lilly announced its first quarter sales results. It identified Cymbalta as its second highest selling drug after Zyprexa. Sales of Cymbalta were 17% higher in the first quarter of 2009 than they were in the previous year.

66.     On information and belief, the removal of the illegal sales aids was prompted by the government's Corporate Integrity Agreement imposed on Lilly in January 2009. The off-label references to somatic symptoms and comparative statements in the absence of supporting data had been in use by Lilly during a period dating back to the introduction of Cymbalta in 2004.

**F.     Strattera**

67.     Strattera has been indicated for the treatment of ADHD since January, 2003. Lilly's sales materials for Strattera make undocumented and unsupported claims as to Strattera's ability to prevent what Lilly associates as social consequences of ADHD such as divorce, job loss and even sexually transmitted diseases.

12

68.     Despite the absence of any supporting data, Lilly's sales representatives are

directed to say that the drug is more effective than alternate stimulant treatments such as Ritalin.

Lilly's sales materials direct its representatives to say, "the Strattera patient is the patient who is

**vulnerable** to symptoms of ADHD, including impulsivity and inattention, in different settings

throughout the day and evening." (See attached as Exhibit "H").

69.     The FDA approved indications for Strattera do not include vulnerability to

symptoms of ADHD. To the contrary, the FDA instructs:

> A diagnosis of ADHD (DSM-IV) implies the presence of hyperactive – impulsive
> or inattentive symptoms that cause impairment that were present before age 7
> years. The symptoms must be persistent, must be more severe than is typically
> observed in individuals at a comparable level of development, and must cause
> clinically significant impairment, e.g. in social, academic or occupational
> functioning, and must be present in two or more settings . . . the symptoms must
> not be better accounted for by another mental disorder. (Emphasis added).

The FDA also instructs:

> The specific etiology of ADHD is unknown, and there is no single diagnostic test.
> Adequate diagnosis requires the use not only of medical but also of special
> psychological, educational, and social resources. Learning may or may not be
> impaired. The diagnosis must be based upon a complete history and evaluation of
> the patient and not solely on the presence of their acquired number of DSM-IV
> characteristics.

The FDA also notes:

> "Drug treatment may not be indicative for all patients with ADHD. It is not
> intended for use in a patient who exhibits symptoms secondary to environmental
> factors and/or other primary psychiatric disorders, including psychosis."

### COUNT I.

### VIOLATION OF THE FALSE CLAIMS ACT, 31 U.S.C. § 3729

70.     Relator repeats and realleges paragraph 1-69 of this Complaint.

71.     From at least January 1, 2006 continuing through January 15, 2009, (in the case of

Zyprexa); from January, 2003 to April, 2009 (in the case of Strattera); from September, 2004 to

13

April, 2009 (in the case of Cymbalta); and from September, 2003 to the present (in the case of

Symbyax), Lilly, in reckless disregard or deliberate ignorance of the truth or falsity of the

information it conveyed, caused the submission of false or fraudulent claims to be paid or

approved by the Government in violation of 31 U.S.C. § 3729(a)(1) through its off-label

promotion of the drugs Zyprexa, Symbyax, Cymbalta and Strattera.

72.     The United States, its fiscal intermediaries and state Medicaid programs, were

unaware of Lilly's off-label sales promotion or the falsity of the records, statements and claims

made by Lilly and as a result thereby have paid and continue to pay Medicare, Medicaid and

CHAMPUS reimbursement that they would not otherwise have paid.

73.     The United States has been damaged by the payment of false and fraudulent

claims.

74.     WHEREFORE, Plaintiff demands judgment against Lilly as follows:

a.     that by reason of the aforementioned violations of the False Claims Act

that this Court enter judgment in Plaintiff's favor and against Lilly in the amount equal to three

times the amount of damages that the United States has sustained because of Lilly's actions, plus

a civil penalty of not less than $5,000 nor more than $10,000 for each violation of 31 U.S.C.

§ 3729;

b.     that Relator, as *qui tam* plaintiff, be awarded the maximum amount

allowed pursuant to § 3730(d) of the False Claims Act and/or any other applicable provision of

law;

c.     that Relator be awarded all costs and expenses of this action, including

attorney's fees and court costs in the prosecution of this suit; and

14

d.    that Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT II.

## VIOLATION OF THE CALIFORNIA FALSE CLAIMS ACT, CAL. GOV. CODE §12651

75.    Relator repeats and realleges paragraphs 1-71 of this Complaint.

76.    From at least January, 2003 continuing through April, 2009, Lilly, in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, caused the submission of false or fraudulent claims to be paid or approved the state of California in violation of CAL. GOV. CODE §12651(a)(1) through its off-label promotion of the drugs Zyprexa, Symbyax, Cymbalta and Strattera.

77.    From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information conveyed, engaged in the practice of off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta and Strattera causing to present to California's state funded Medicaid Health Program false or fraudulent claims for payment in violation of CAL GOV. CODE §12651(a)(1).

78.    California's state Medicaid program was unaware of the falsity of Lilly's records, statements and claims and as a result thereby has paid and continues to pay Medicaid reimbursement that it would not otherwise have paid.

79.    The California State Medicaid Program has been damaged by the payment of false and fraudulent claims.

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

a.    that by reason of the aforementioned violations of the California False Claims Act that this Court enter judgment in Plaintiffs' favor and against Lilly in an amount equal to not less than two times and not more than three times the amount of damages that

15

DMI\1651951.7

California has sustained because of Lilly's actions, plus a civil penalty of not more than $10,000 for each violation of CAL. GOV. CODE §12651(a)(1);

      b.    that Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant to CAL. GOV. CODE §12652(g)(2) and/or any other applicable provision of law;

      c.    that Relator be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

      d.    that Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT III.

## VIOLATION OF THE DELAWARE FALSE CLAIMS AND REPORTING ACT, DEL. CODE ANN. TIT. 6 §1201

80.    Relator repeats and realleges paragraphs 1-71 of this Complaint.

81.    From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, caused the submission of false or fraudulent claims to be paid or approved by the state of Delaware in violation of DEL. CODE ANN. TIT. 6, §1201(a)(1) through its off-label promotion of the drugs Zyprexa, Symbyax, Cymbalta and Strattera.

82.    From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information conveyed, engaged in the practice of the off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta and Strattera causing to present to Delaware's state funded Medicaid health care program false or fraudulent claims for payment in violation of DEL. CODE ANN. TIT. 6, §1201(a)(1).

16

83.     Delaware's State Medicaid Program was unaware of the falsity of Lilly's records, statements and claims and as a result thereby has paid and continues to pay Medicaid reimbursement that it would not otherwise have paid.

84.     The Delaware State Medicaid Program has been damaged by the payment of false and fraudulent claims.

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

a.     that by reason of the aforementioned violations of the Delaware False Claims and Reporting Act that this Court enter judgment in Plaintiffs' favor and against Lilly in an amount equal to not less than two times and not more than three times the amount of damages that Delaware has sustained because of Lilly's actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of DEL. CODE ANN. TIT. 6, §1201(a)(1);

b.     that Relator, as qui tam plaintiff, be awarded the maximum amount allowed pursuant to DEL. CODE ANN. tit. 6, §1205(a) and/or any other applicable provision of law;

c.     that Relator be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

d.     that Plaintiffs and Relator have such other and further relief that this Court deems just and proper.

## COUNT IV.

## VIOLATION OF D.C. CODE ANN. §§2-308.13–.15

85.     Relator repeats and realleges paragraphs 1-71 of this Complaint.

86.     From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed caused the

17

submission of false or fraudulent claims to be paid or approved by the District of Columbia in violation of D.C. CODE ANN. §2-308.14(a)(1) through the off-label promotion of the drugs Zyprexa, Symbyax, Cymbalta and Strattera.

87.     From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the of the information conveyed, engaged in the practice of the off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta, and Strattera causing to present to District of Columbia's state funded Medicaid health care program false or fraudulent claims for payment in violation of D.C. CODE ANN. §2-308.14(a)(1).

88.     The District of Columbia's Medicaid Program was unaware of the falsity of Lilly's records, statements and claims and as a result thereby has paid and continues to pay Medicaid reimbursement that it would not otherwise have paid.

89.     The District of Columbia Medicaid Program has been damaged by the payment of false and fraudulent claims.

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

a.     that by reason of the aforementioned violations of the District of Columbia's false claim provisions that this Court enter judgment in Plaintiffs' favor and against Lilly in an amount equal to not less than two times and not more than three times the amount of damages that the District of Columbia has sustained because of Lilly's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of D.C. CODE ANN. §2-308.14(a)(1);

18

DM1\1651951.7

b.      that Relator, as qui tam plaintiff, be awarded the maximum amount

allowed pursuant to D.C. CODE ANN. §2-308.15(f)(1) and/or any other applicable provision of

law;

c.      that Relator be awarded all costs and expenses of this action, including

attorney's fees and court costs in the prosecution of this suit; and

d.      that Plaintiff and Relator have such other and further relief that this Court

deems just and proper.

## COUNT V.

## VIOLATION OF THE FLORIDA FALSE CLAIMS ACT, FLA. STAT. ANN. §68.081-.090

90.     Relator repeats and realleges paragraphs 1-71 of this Complaint.

91.     From at least January, 2003 continuing through April, 2009, Lilly in reckless

disregard or deliberate ignorance of the truth or falsity of the information it conveyed, caused the

submission of false or fraudulent claims to be paid or approved by the state of Florida in

violation of FLA. STAT. ANN. §68.082(2)(a)(1) through its off-label promotion of the drugs

Zyprexa, Symbyax, Cymbalta and Strattera.

92.     From at least January, 2003 continuing through  April, 2009, Lilly in reckless

disregard or deliberate ignorance of the truth or falsity of the information conveyed, engaged in

the practice of the off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta, and Strattera

causing to present to Florida's state funded Medicaid health care program false or fraudulent

claims for payment in violation of FLA. STAT. ANN. §68.082(2)(a)(1).

93.     Florida's State Medicaid Program was unaware of the falsity of Lilly's records,

statements and claims and as a result thereby has paid and continues to pay Medicaid

reimbursement that it would not otherwise have paid.

19

94.     The Florida State Medicaid Program has been damaged by the payment of false and fraudulent claims.

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

a.     that by reason of the aforementioned violations of the Florida False Claims Act that this Court enter judgment in Plaintiffs' favor and against Lilly in an amount equal to not less than two times and not more than three times the amount of damages that the state of Florida has sustained because of Lilly's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of FLA. STAT. ANN. §68.082(2)(a)(1);

b.     that Relator, as qui tam plaintiff, be awarded the maximum amount allowed pursuant to FLA. STAT. ANN. §68.085(1)-(2) and/or any other applicable provision of law;

c.     that Relator be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

d.     that Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT VI.

### VIOLATION OF HAW. REV. STAT. §§661-21 to 661-29

95.     Relator repeats and realleges paragraphs 1-71 of this Complaint.

96.     From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, caused the submission of false or fraudulent claims to be paid or approved by the state of Hawaii in violation of HAW. REV. STAT. §661-21(a)(1) through its off-label promotion of the drugs Zyprexa, Symbyax, Cymbalta and Strattera.

20

97.    From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information conveyed, engaged in the practice of the off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta, and Strattera causing to present to Hawaii's state funded Medicaid health care program false or fraudulent claims for payment in violation of HAW. REV. STAT. §661-21(a)(1).

98.    Hawaii's State Medicaid Program was unaware of the falsity of Lilly's records, statements and claims and as a result thereby has paid and continues to pay Medicaid reimbursement that it would not otherwise have paid.

99.    The Hawaii State Medicaid Program has been damaged by the payment of false and fraudulent claims.

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

a.    that by reason of the aforementioned violations of Hawaii's false claim provisions that this Court enter judgment in Plaintiffs' favor and against Lilly in an amount equal to not less than two times and not more than three times the amount of damages that the state of Hawaii has sustained because of Lilly's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of HAW. REV. STAT. §661-21(a)(1);

b.    that Relator, as qui tam plaintiff, be awarded the maximum amount allowed pursuant to HAW. REV. STAT. §661-27(a) and/or any other applicable provision of law;

c.    that Relator be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

d.    that Plaintiff and Relator have such other and further relief that this Court deems just and proper.

DM1\1651951.7

## COUNT VII.

## VIOLATION OF THE ILLINOIS WHISTLEBLOWER REWARD AND PROTECTION ACT, 740 ILL. COMP. STAT. 175/1-8

100.   Relator repeats and realleges paragraphs 1-71 of this Complaint.

101.   From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, caused the submission of false or fraudulent claims to be paid or approved by the state of Illinois in violation of 740 ILL. COMP. STAT. 175/ 3(a)(1) through its off-label promotion of the drugs Zyprexa, Symbyax, Cymbalta and Strattera.

102.   From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, engaged in the practice of the off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta, and Strattera causing to present to Illinois' state funded Medicaid health care program false or fraudulent claims for payment in violation of 740 ILL. COMP. STAT. 175/ 3(a)(1).

103.   Illinois' State Medicaid Program was unaware of the falsity of Lilly's records, statements and claims and as a result thereby has paid and continues to pay Medicaid reimbursement that it would not otherwise have paid.

104.   The Illinois State Medicaid Program has been damaged by the payment of false and fraudulent claims.

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

a.   that by reason of the aforementioned violations of the Illinois Whistleblower Reward and Protection Act that this Court enter judgment in Plaintiffs' favor and against Lilly in an amount equal to three times the amount of damages that the state of Illinois

has sustained because of Lilly's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of 740 ILL. COMP. STAT. 175/ 3(a)(1);

   b.      that Relator, as qui tam plaintiff, be awarded the maximum amount allowed pursuant to 740 ILL. COMP. STAT. 175/ 4(d)(1)  and/or any other applicable provision of law;

   c.      that Relator be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

   d.      that Plaintiff and Relator have such other and further relief that this Court deems just and proper.

### COUNT VIII.

### VIOLATION OF THE LOUISIANA MEDICAL ASSISTANCE PROGRAMS

### INTEGRITY LAW, LA. REV. STAT. ANN. §§46:437.1-440.3

105.   Relator repeats and realleges paragraphs 1-71 of this Complaint.

106.   From at least January, 2003 continuing through April, 2009, Lilly, in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, caused the submission of false or fraudulent claims to be paid or approved by the state of Louisiana in violation of LA. REV. STAT. ANN. §46:438.3(A) through its off-label promotion of the drugs Zyprexa, Symbyax, Cymbalta and Strattera.

107.   From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information conveyed, engaged in the practice of off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta and Strattera causing to present to California's state funded Medicare Health Program false, fraudulent claims for payment in violation of LA. REV. STAT. ANN. §46:438.3(A).

23

108.    The state of Louisiana's Medicaid program was unaware of the falsity of Lilly's records, statements and claims and as a result thereby has paid and continues to pay Medicaid reimbursement that it would not otherwise have paid.

109.    The state of Louisiana's Medicaid Program has been damaged by the payment of false and fraudulent claims.

WHEREFORE, Plaintiff demands judgment against Lilly as follows:

a.    that by reason of the aforementioned violations of the Louisiana Medical Assistance Programs Integrity Law that this Court enter judgment in Plaintiff's favor and against Lilly a civil fine in an amount not to exceed three times the amount of damages that the state of Louisiana has sustained because of Lilly actions, plus payment of interest on the amount of the civil fine, plus a civil penalty of not more than $10,000 for each violation of LA. REV. STAT. ANN. §46:438.3(A);

b.    that Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant to LA. REV. STAT. ANN. §46:438.4(A) and/or any other applicable provision of law;

c.    that Relator be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

d.    that Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT IX.

## <u>VIOLATION OF MASS. GEN. LAWS. CH. 12, §5A-5O</u>

110.    Relator repeats and realleges paragraphs 1-71 of this Complaint.

111.    From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, caused the

24

submission of false or fraudulent claims to be paid or approved by the Commonwealth of Massachusetts in violation of MASS. GEN. LAWS. CH. 12, §5B(1) through its off-label promotion of the drugs Zyprexa, Symbyax, Cymbalta and Strattera.

112.   From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information conveyed, engaged in the practice of the off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta, and Strattera causing to present to Massachusetts' state funded Medicaid health care program false or fraudulent claims for payment in violation of MASS. GEN. LAWS. CH. 12, §5B(1).

113.   Massachusetts' Medicaid Program was unaware of the falsity of Lilly's records, statements and claims and as a result thereby has paid and continues to pay Medicaid reimbursement that it would not otherwise have paid.

114.   The Massachusetts Medicaid Program has been damaged by the payment of false and fraudulent claims.

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

a.   that by reason of the aforementioned violations of Massachusetts' false claim provisions that this Court enter judgment in Plaintiffs' favor and against Lilly in an amount equal to three times the amount of damages, including consequential damages, that the Commonwealth of Massachusetts has sustained because of Lilly's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of MASS. GEN. LAWS. CH. 12, §5B(1);

b.   that Relator, as qui tam plaintiff, be awarded the maximum amount allowed pursuant to MASS. GEN. LAWS. CH. 12, §5F(1)-(3) and/or any other applicable provision of law;

25

c.     that Relator be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

d.     that Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT X.

## VIOLATION OF NEV. REV. STAT. § 357.010–.250

115.   Relator repeats and realleges paragraphs 1-71 of this Complaint.

116.   From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, caused the submission of false or fraudulent claims to be paid or approved by the state of Nevada in violation of NEV. REV. STAT. § 357.014(1)(a) through its off-label promotion of the drugs Zyprexa, Symbyax, Cymbalta and Strattera.

117.   From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information conveyed, engaged in the practice of the off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta, and Strattera causing to present to Nevada's state funded Medicaid health care program false or fraudulent claims for payment in violation of NEV. REV. STAT. § 357.014(1)(a)).

118.   Nevada's State Medicaid Program was unaware of the falsity of Lilly's records, statements and claims and as a result thereby has paid and continues to pay Medicaid reimbursement that it would not otherwise have paid.

119.   The Nevada State Medicaid Program has been damaged by the payment of false and fraudulent claims.

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

26

a.       that by reason of the aforementioned violations of Nevada's false claim provisions that this Court enter judgment in Plaintiffs' favor and against Lilly in an amount equal to three times the amount of damages that the state of Nevada has sustained because of Lilly's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of NEV. REV. STAT. § 357.014(1)(a);

b.       that Relator, as qui tam plaintiff, be awarded the maximum amount allowed pursuant to NEV. REV. STAT. § 357.210(1) and/or any other applicable provision of law;

c.       that Relator be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

d.       that Plaintiff and Relators have such other and further relief that this Court deems just and proper.

## COUNT XI.

## VIOLATION OF THE TENNESSEE MEDICAID FALSE CLAIMS ACT, TENN. CODE ANN. §§71-5-181 TO -185

120.    Relator repeats and realleges paragraphs 1-71 of this Complaint.

121.    From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, caused the submission of false or fraudulent claims to be paid or approved by the state of Tennessee in violation of TENN. CODE ANN. §71-5-182(a)(1)(A) through its off-label promotion of the drugs Zyprexa, Symbyax, Cymbalta and Strattera.

122.    From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information conveyed, engaged in

27

the practice of the off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta, and Strattera causing to present to Tennessee's state funded Medicaid health care program false or fraudulent claims for payment in violation of TENN. CODE ANN. §71-5-182(a)(1)(A).

123. Tennessee's State Medicaid Program was unaware of the falsity of Lilly's records, statements and claims and as a result thereby has paid and continues to pay Medicaid reimbursement that it would not otherwise have paid.

124. The Tennessee State Medicaid Program has been damaged by the payment of false and fraudulent claims.

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

a. that by reason of the aforementioned violations of the Tennessee Medicaid False Claims Act that this Court enter judgment in Plaintiffs' favor and against Lilly in an amount equal to not less than two times and not more than three times the amount of damages that the state of Tennessee has sustained because of Lilly's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of TENN. CODE ANN. §71-5-182(a)(1)(A);

b. that Relator, as qui tam plaintiff, be awarded the maximum amount allowed pursuant to TENN. CODE ANN. §71-5-183(c)(1) and/or any other applicable provision of law;

c. that Relator be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

d. that Plaintiff and Relator have such other and further relief that this Court deems just and proper.

DM1\1651951.7

## COUNT XII.

## VIOLATION OF THE TEXAS MEDICAID FRAUD PREVENTION STATUTE, TEX.

## HUM. RES. CODE ANN. §§ 36.001-.132

125.   Relators repeat and reallege paragraphs 1-71 of this Complaint.

126.   From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, caused the submission of false or fraudulent claims to be paid or approved by the state of Texas by causing false or fraudulent claims to be paid or approved by the state of Texas in violation of TEX. HUM. RES. CODE ANN. §36.002(1) through its off-label promotion of the drugs Zyprexa, Symbyax, Cymbalta and Strattera.

127.   From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information conveyed, engaged in the practice of the off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta, and Strattera causing to present to Texas' state funded Medicaid health care program false or fraudulent claims for payment in violation of TEX. HUM. RES. CODE ANN. §36.002(1).

128.   Texas' State Medicaid Program was unaware of the falsity of Lilly's records, statements and claims and as a result thereby has paid and continues to pay Medicaid reimbursement that it would not otherwise have paid.

129.   The Texas State Medicaid Program has been damaged by the payment of false and fraudulent claims.

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

a.       that by reason of the aforementioned violations of the Texas Medicaid Fraud Prevention Statute that this Court enter judgment in Plaintiffs' favor and against Lilly in

29

an amount equal to two times the amount of damages that the state of Texas has sustained because of Lilly's actions, plus a civil penalty of not less than $5,000 and not more than $15,000 for each violation of TEX. HUM. RES. CODE ANN. §36.002(1) that results in injury to an elderly person, a disabled person, or a person younger than 18 years of age, or not less than $1,000 and not more than $10,000 for each violation of TEX. HUM. RES. CODE ANN. §36.002(1) that does not result in injury to a person;

        b.     that Relator, as qui tam plaintiff, be awarded the maximum amount allowed pursuant to TEX. HUM. RES. CODE ANN. §36.110 and/or any other applicable provision of law;

        c.     that Relator be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

        d.     that Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT XIII.

## VIOLATION OF THE VIRGINIA FRAUD AGAINST TAXPAYERS ACT, VA. CODE ANN. §§ 8.01-216.1 – 216.19

130.    Relator repeats and realleges paragraphs 1-71 of this Complaint.

131.    From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, caused the submission of false or fraudulent claims to be paid or approved by the Commonwealth of Virginia in violation of VA. CODE ANN. § 8.01-216.3(A)(1) through its off-label promotion of the drugs Zyprexa, Symbyax, Cymbalta and Strattera.

30

132.    From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information conveyed, engaged in the practice of the off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta, and Strattera causing to present to Virginia's state funded Medicaid health care program false or fraudulent claims for payment in violation of VA. CODE ANN. § 8.01-216.3(A)(1).

133.    Virginia's Medicaid Program was unaware of the falsity of Lilly's records, statements and claims and as a result thereby has paid and continues to pay Medicaid reimbursement that it would not otherwise have paid.

134.    The Virginia Medicaid Program has been damaged by the payment of false and fraudulent claims.

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

        a.     that by reason of the aforementioned violations of the Virginia Fraud Against Taxpayers Act that this Court enter judgment in Plaintiffs' favor and against Lilly in an amount equal to not less than two times and not more than three times the amount of damages that the Commonwealth of Virginia has sustained because of Lilly's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of VA. CODE ANN. §§ 8.01-216.3(A)(1);

        b.     that Relator, as qui tam plaintiff, be awarded the maximum amount allowed pursuant to VA. CODE ANN. § 8.01–216.7(A) and/or any other applicable provision of law;

        c.     that Relator be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

d.     that Plaintiff and Relator have such other and further relief that this Court

deems just and proper.

## COUNT XIV.

## VIOLATION OF THE GEORGIA STATE FALSE MEDICAID CLAIMS ACT, GA. CODE ANN. § 49-4-168 – 49-4-168.6

135.   Relator repeats and realleges paragraphs 1-71 of this Complaint.

136.   From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, caused the submission of false or fraudulent claims to be paid or approved by the state of Georgia in violation of GA. CODE ANN. § 49-4-168.1 through its off-label promotion of the drugs Zyprexa, Symbyax, Cymbalta and Strattera.

137.   From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information conveyed, engaged in the practice of the off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta, and Strattera causing to present to Georgia's state funded Medicaid health care program false or fraudulent claims for payment in violation of GA. CODE ANN. § 49-4-168.1.

138.   Georgia's State Medicaid Program was unaware of the falsity of Lilly's records, statements and claims and as a result thereby has paid and continues to pay Medicaid reimbursement that it would not otherwise have paid.

139.   The Georgia State Medicaid Program has been damaged by the payment of false and fraudulent claims.

32

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

a.     that by reason of the aforementioned violations of the Georgia False Medicaid Claims Act that this Court enter judgment in Plaintiffs' favor and against Lilly in an amount equal to not less than two times and not more than three times the amount of damages that Georgia has sustained because of Lilly's actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of GA. CODE ANN. § 49-4-168.1;

b.     that Relator, as qui tam plaintiff, be awarded the maximum amount allowed pursuant to GA. CODE ANN. § 49-4-168.2(i) and/or any other applicable provision of law;

c.     that Relator be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

d.     that Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT XV.

## VIOLATION OF THE INDIANA STATE FALSE CLAIMS AND WHISTLEBLOWERS PROTECTION ACT, IND. CODE ANN. § 5-11-5.5-1 – 5-11-5.5-18

140.    Relator repeats and realleges paragraphs 1-71 of this Complaint.

141.    From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, caused the submission of false or fraudulent claims to be paid or approved by the state of Indiana in violation of IND. CODE ANN. § 5-11-5.5-2 through its off-label promotion of the drugs Zyprexa, Symbyax, Cymbalta and Strattera.

33

142.    From at least January, 2003 continuing through April, 2009, Lilly in reckless

disregard or deliberate ignorance of the truth or falsity of the information conveyed, engaged in

the practice of the off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta, and Strattera

causing to present to Indiana's state funded Medicaid health care program false or fraudulent

claims for payment in violation of IND. CODE ANN. § 5-11-5.5-2.

143.    Indiana's State Medicaid Program was unaware of the falsity of Lilly's records,

statements and claims and as a result thereby has paid and continues to pay Medicaid

reimbursement that it would not otherwise have paid.

144.    The Indiana State Medicaid Program has been damaged by the payment of false

and fraudulent claims.

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

a.    that by reason of the aforementioned violations of the Indiana State False

Claims and Whistleblower Protection Act that this Court enter judgment in Plaintiffs' favor and

against Lilly in an amount equal to not less than two times and not more than three times the

amount of damages that Indiana has sustained because of Lilly's actions, plus a civil penalty of

not less than $5,000 each violation of IND. CODE ANN. § 5-11-5.5-2;

b.    that Relator, as qui tam plaintiff, be awarded the maximum amount

allowed pursuant to IND. CODE ANN. § 5-11-5.5-6 and/or any other applicable provision of

law;

c.    that Relator be awarded all costs and expenses of this action, including

attorney's fees and court costs in the prosecution of this suit; and

d.    that Plaintiff and Relator have such other and further relief that this Court

deems just and proper.

DMI\1651951.7

## COUNT XVI.

## VIOLATION OF THE MICHIGAN MEDICAID FALSE CLAIMS ACT, MICH. COMP

## LAWS § 400.601- 400.613

145.   Relator repeats and realleges paragraphs 1-71 of this Complaint.

146.   From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, caused the submission of false or fraudulent claims to be paid or approved by the state of Michigan in violation of MICH. COMP LAWS § 400.603, 606 and 607 through its off-label promotion of the drugs Zyprexa, Symbyax, Cymbalta and Strattera.

147.   From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information conveyed, engaged in the practice of the off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta, and Strattera causing to present to Michigan's state funded Medicaid health care program false or fraudulent claims for payment in violation of MICH. COMP LAWS § 400.603, 606 and 607.

148.   Michigan's State Medicaid Program was unaware of the falsity of Lilly's records, statements and claims and as a result thereby has paid and continues to pay Medicaid reimbursement that it would not otherwise have paid.

149.   The Michigan State Medicaid Program has been damaged by the payment of false and fraudulent claims.

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

a.      that by reason of the aforementioned violations of the Michigan State Medicaid False Claims Act that this Court enter judgment in Plaintiffs' favor and against Lilly in an amount equal to three times the amount of damages that Michigan has sustained because of

35

Lilly's actions, plus a civil penalty equal to the full amount Lilly unjustly received as a result of its unlawful conduct for violating MICH. COMP LAWS § 400.603, 606 and 607;

      b.    that Relator, as qui tam plaintiff, be awarded the maximum amount allowed pursuant to MICH. COMP LAWS § 400.610a and/or any other applicable provision of law;

      c.    that Relator be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

      d.    that Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT XVII.

## VIOLATION OF THE MONTANA FALSE CLAIMS ACT,  MONT. CODE ANN.

### § 17-8-401 – 17-8-412

150.    Relator repeats and realleges paragraphs 1-71 of this Complaint.

151.    From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, caused the submission of false or fraudulent claims to be paid or approved by the state of Montana in violation of MONT. CODE ANN. § 17-8-401 through its off-label promotion of the drugs Zyprexa, Symbyax, Cymbalta and Strattera.

152.    From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information conveyed, engaged in the practice of the off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta, and Strattera causing to present to Montana's state funded Medicaid health care program false or fraudulent claims for payment in violation of MONT. CODE ANN. § 17-8-401.

36

153.   Montana's State Medicaid Program was unaware of the falsity of Lilly's records, statements and claims and as a result thereby has paid and continues to pay Medicaid reimbursement that it would not otherwise have paid.

154.   The Montana State Medicaid Program has been damaged by the payment of false and fraudulent claims.

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

a.   that by reason of the aforementioned violations of the Montana False Claims Act that this Court enter judgment in Plaintiffs' favor and against Lilly in an amount equal to not less than two times and not more than three times the amount of damages that Montana has sustained because of Lilly's actions, plus a civil penalty of not more than $10,000 for each violation of MONT. CODE ANN. § 17-8-401.

b.   that Relator, as qui tam plaintiff, be awarded the maximum amount allowed pursuant to MONT. CODE ANN. § 17-8-410 and/or any other applicable provision of law;

c.   that Relator be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

d.   that Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT XVIII.

## VIOLATION OF THE NEW HAMPSHIRE HEALTH CARE  FALSE CLAIMS ACT,

## N.H. REV. STAT. ANN. § 167:58 - 167:61-b

155.   Relator repeats and realleges paragraphs 1-71 of this Complaint.

156.    From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, caused the submission of false or fraudulent claims to be paid or approved by the state of New Hampshire in violation of N.H. REV. STAT. ANN. § 167:61-b through its off-label promotion of the drugs Zyprexa, Symbyax, Cymbalta and Strattera.

157.    From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information conveyed, engaged in the practice of the off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta, and Strattera causing to present to New Hampshire's state funded Medicaid health care program false or fraudulent claims for payment in violation of N.H. REV. STAT. ANN. § 167:61-b.

158.    New Hampshire's State Medicaid Program was unaware of the falsity of Lilly's records, statements and claims and as a result thereby has paid and continues to pay Medicaid reimbursement that it would not otherwise have paid.

159.    The New Hampshire State Medicaid Program has been damaged by the payment of false and fraudulent claims.

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

a.    that by reason of the aforementioned violations of the New Hampshire Fraud and False Claims Act that this Court enter judgment in Plaintiffs' favor and against Lilly in an amount equal to not less than two times and not more than three times the amount of damages that New Hampshire has sustained because of Lilly's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of N.H. REV. STAT. ANN. § 167:61-b.

DM1\1651951.7

b.      that Relator, as qui tam plaintiff, be awarded the maximum amount

allowed pursuant to N.H. REV. STAT. ANN. § 167:61-e and/or any other applicable provision

of law;

c.      that Relator be awarded all costs and expenses of this action, including

attorney's fees and court costs in the prosecution of this suit; and

d.      that Plaintiff and Relator have such other and further relief that this Court

deems just and proper.

## COUNT XIX.

## VIOLATION OF THE NEW MEXICO MEDICAID FALSE CLAIMS ACT, N.M.

## STAT. ANN. § 27-14-1 – 27-14-15

160.    Relator repeats and realleges paragraphs 1-71 of this Complaint.

161.    From at least January, 2003 continuing through April, 2009, Lilly in reckless

disregard or deliberate ignorance of the truth or falsity of the information it conveyed, caused the

submission of false or fraudulent claims to be paid or approved by the state of New Mexico in

violation of N.M. STAT. ANN. § 27-14-4 through its off-label promotion of the drugs Zyprexa,

Symbyax, Cymbalta and Strattera.

162.    From at least January, 2003 continuing through April, 2009, Lilly in reckless

disregard or deliberate ignorance of the truth or falsity of the information conveyed, engaged in

the practice of the off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta, and Strattera

causing to present to New Mexico's state funded Medicaid health care program false or

fraudulent claims for payment in violation of N.M. STAT. ANN. § 27-14-4.

39

163.   New Mexico's State Medicaid Program was unaware of the falsity of Lilly's records, statements and claims and as a result thereby has paid and continues to pay Medicaid reimbursement that it would not otherwise have paid.

164.   The New Mexico State Medicaid Program has been damaged by the payment of false and fraudulent claims.

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

a.     that by reason of the aforementioned violations of the New Mexico Medicaid False Claims Act that this Court enter judgment in Plaintiffs' favor and against Lilly in an amount equal to three times the amount of damages that New Mexico has sustained because of Lilly's and the co-conspirators' actions for violation of N.M. STAT. ANN. § 27-14-4.

b.     that Relator, as qui tam plaintiff, be awarded the maximum amount allowed pursuant to N.M. STAT. ANN. § 27-14-9 and/or any other applicable provision of law;

c.     that Relator be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

d.     that Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT XX.

## VIOLATION OF THE NEW YORK FALSE CLAIMS ACT, N.Y. STATE FIN. LAW § 187-194

165.   Relator repeats and realleges paragraphs 1-71 of this Complaint.

166.   From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, caused the submission of false or fraudulent claims to be paid or approved by the state of New York in

violation of N.Y. STATE FIN. LAW § 189 through its off-label promotion of the drugs Zyprexa, Symbyax, Cymbalta and Strattera.

167.    From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information conveyed, engaged in the practice of the off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta, and Strattera causing to present to New York's state funded Medicaid Health Care Program false or fraudulent claims for payment in violation of N.Y. STATE FIN. LAW § 189.

168.    New York's State Medicaid Program was unaware of the falsity of Lilly's records, statements and claims and as a result thereby has paid and continues to pay Medicaid reimbursement that it would not otherwise have paid.

169.    The New York State Medicaid Program has been damaged by the payment of false and fraudulent claims.

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

a.      that by reason of the aforementioned violations of the New York False Claims Act that this Court enter judgment in Plaintiffs' favor and against Lilly in an amount equal to not less than two times and not more than three times the amount of damages that New York has sustained because of Lilly's and the co-conspirators' actions, plus a civil penalty of not less than $6,000 and not more than $12,000 for each violation of for violation of N.Y. STATE FIN. LAW § 189.

b.      that Relator, as qui tam plaintiff, be awarded the maximum amount allowed pursuant to N.Y. STATE FIN. LAW § 190(6) and/or any other applicable provision of law;

41

c.      that Relator be awarded all costs and expenses of this action, including

attorney's fees and court costs in the prosecution of this suit; and

d.      that Plaintiff and Relator have such other and further relief that this Court

deems just and proper.

## COUNT XXI.

## VIOLATION OF THE NEW JERSEY FALSE CLAIMS ACT N.J. STAT. § 2A:32C-1 -17

170.    Relator repeats and realleges paragraphs 1-71 of this Complaint.

171.    From at least January, 2003 continuing through April, 2009, Lilly in reckless

disregard or deliberate ignorance of the truth or falsity of the information it conveyed, caused the

submission of false or fraudulent claims to be paid or approved by the state of New Jersey in

violation of N.J. STAT. § 2A:32C-1 through its off-label promotion of the drugs Zyprexa,

Symbyax, Cymbalta and Strattera.

172.    From at least January, 2003 continuing through April, 2009, Lilly in reckless

disregard or deliberate ignorance of the truth or falsity of the information conveyed, engaged in

the practice of the off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta, and Strattera

causing to present to New Jersey's state funded Medicaid health care program false or fraudulent

claims for payment in violation of N.J. STAT. § 2A:32C-1.

173.    New Jersey's State Medicaid Program was unaware of the falsity of Lilly's

records, statements and claims and as a result thereby has paid and continues to pay Medicaid

reimbursement that it would not otherwise have paid.

174.    The New Jersey State Medicaid Program has been damaged by the payment of

false and fraudulent claims.

42

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

a.     that by reason of the aforementioned violations of the New Jersey False Claims Act that this Court enter judgment in Plaintiffs' favor and against Lilly in an amount equal to not less than two times and not more than three times the amount of damages that New Jersey has sustained because of Lilly's actions, plus a civil penalty of not less than $5,000 and not more than $10,000 for each violation of N.J. STAT. § 2A:32C-1.

b.     that Relator, as qui tam plaintiff, be awarded the maximum amount allowed pursuant to N.J. STAT. § 2A:32C-7 and/or any other applicable provision of law;

c.     that Relator be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

d.     that Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT XXII.

## VIOLATION OF THE OKLAHOMA MEDICAID FALSE CLAIMS

## ACT 63 OKL. ST. § 5053-5053.7

175.    Relator repeats and realleges paragraphs 1-71 of this Complaint.

176.    From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, caused the submission of false or fraudulent claims to be paid or approved by the state of Oklahoma in violation of 63 Okl. St. § 5053.1 through its off-label promotion of the drugs Zyprexa, Symbyax, Cymbalta and Strattera.

177.    From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information conveyed, engaged in

DM1\1651951.7

the practice of the off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta, and Strattera causing to present to Oklahoma's state funded Medicaid health care program false or fraudulent claims for payment in violation of 63 Okl. St. § 5053.1.

178.   Oklahoma's State Medicaid Program was unaware of the falsity of Lilly's records, statements and claims and as a result thereby has paid and continues to pay Medicaid reimbursement that it would not otherwise have paid.

179.   The Oklahoma State Medicaid Program has been damaged by the payment of false and fraudulent claims.

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

a.      that by reason of the aforementioned violations of the Oklahoma Medicaid False Claims Act that this Court enter judgment in Plaintiffs' favor and against Lilly in an amount equal to three times the amount of damages that Oklahoma has sustained because of Lilly's actions, plus a civil penalty of not less than $5,000 and not more than $10,000, if not already imposed by the Federal False Claims Act for the same or prior action, for each violation of for violation of 63 Okl. St. § 5053.1.

b.      that Relator, as qui tam plaintiff, be awarded the maximum amount allowed pursuant to 63 Okl. St. § 5053.1.4 and/or any other applicable provision of law;

c.      that Relator be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

d.      that Plaintiff and Relator have such other and further relief that this Court deems just and proper.

DM1\1651951.7

## COUNT XXIII.

## VIOLATION OF RHODE ISLAND'S STATE FALSE CLAIMS ACT R.I. GEN.

## LAWS § 9-1.1-1 – 9-1.1-8

180.    Relator repeats and realleges paragraphs 1-71 of this Complaint.

181.    From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed, caused the submission of false or fraudulent claims to be paid or approved by the state of Rhode Island in violation of R.I. Gen. Laws § 9-1.1-1 through its off-label promotion of the drugs Zyprexa, Symbyax, Cymbalta and Strattera.

182.    From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information conveyed, engaged in the practice of the off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta, and Strattera causing to present to Rhode Island's state funded Medicaid health care program false or fraudulent claims for payment in violation of R.I. Gen. Laws § 9-1.1-1.

183.    Rhode Island's State Medicaid Program was unaware of the falsity of Lilly's records, statements and claims and as a result thereby has paid and continues to pay Medicaid reimbursement that it would not otherwise have paid.

184.    The Rhode Island State Medicaid Program has been damaged by the payment of false and fraudulent claims.

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

a.      that by reason of the aforementioned violations of Rhode Island's State False Claims Act that this Court enter judgment in Plaintiffs' favor and against Lilly in an amount equal to three times the amount of damages that Rhode Island has sustained because of

45

Lilly's actions, plus a civil penalty of not less than $5,000 and not more than $10,000, for each violation of for violation of R.I. Gen. Laws § 9-1.1-1.

      b.     that Relator, as qui tam plaintiff, be awarded the maximum amount allowed pursuant to R.I. Gen. Laws § 9-1.1-4(d) and/or any other applicable provision of law;

      c.     that Relator be awarded all costs and expenses of this action, including attorney's fees and court costs in the prosecution of this suit; and

      d.     that Plaintiff and Relator have such other and further relief that this Court deems just and proper.

## COUNT XXIV.

## VIOLATION OF WIS. STAT. § 20.931 FOR FALSE CLAIMS FOR MEDICAL ASSISTANCE

185.    Relator repeats and realleges paragraphs 1-71 of this Complaint.

186.    From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information it conveyed caused the submission of false or fraudulent claims to be paid or approved by the state of Wisconsin in violation of Wis. Stat. § 20.931 through its off-label promotion of the drugs Zyprexa, Symbyax, Cymbalta and Strattera.

187.    From at least January, 2003 continuing through April, 2009, Lilly in reckless disregard or deliberate ignorance of the truth or falsity of the information conveyed, engaged in the practice of the off-label marketing of the drugs Zyprexa, Symbyax, Cymbalta, and Strattera causing to present Wisconsin's state funded medical assistance program false or fraudulent claims for payment in violation of Wis. Stat. § 20.931.

DM1\1651951.7

188.   Wisconsin's state medical assistance program was unaware of the falsity of Lilly's records, statements and claims and as a result thereby has paid and continues to pay medical reimbursement that it would not otherwise have paid.

189.   The Wisconsin medical assistance program has been damaged by the payment of false and fraudulent claims.

WHEREFORE, Plaintiffs demand judgment against Lilly as follows:

a.   that by reason of the aforementioned violations of Wis. Stat. § 20.931 for False Claims for Medical Assistance  that this Court enter judgment in Plaintiffs' favor and against Lilly in an amount not less than two times and not more than three times the amount of damages that Wisconsin has sustained because of Lilly's actions, plus a civil penalty of not less than $5,000 and not more than $10,000, for each violation of for violation of Wis. Stat. § 20.931.

b.   that Relator, as qui tam plaintiff, be awarded the maximum amount allowed pursuant to and/or any other applicable provision of law;

47

c.   that Relator be awarded all costs and expenses of this action, including

attorney's fees and court costs in the prosecution of this suit; and

d.   that Plaintiff and Relator have such other and further relief that this Court

deems just and proper.

Respectfully submitted,

DUANE MORRIS LLP

Michael M. Mustokoff
(Atty. I.D. No. 15674)
Mark Lipowicz
(Atty. I.D. No.20716)
Teresa N. Cavenagh
(Atty. I.D. No. 43845)
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1000

Dated: __April 30, 2009__

Attorneys for Plaintiffs

48

**Exhibit A**

| Market | Product |
|---|---|
| ADP/Pain | CYMBALTA |
| | PROZAC |
| | ZOLOFT |
| | PAROXETINE HCL |
| | PAXIL |
| | LUVOX |
| | EFFEXOR |
| | EFFEXOR XR |
| | NEFAZODONE HCL |
| | SERZONE |
| | WELLBUTRIN |
| | ANAFRANIL |
| | CLOMIPRAMINE HCL |
| | AMITRIPTYLINE HCL |
| | ELAVIL |
| | IMIPRAMINE HCL |
| | IMIPRAMINE PAM |
| | TOFRANIL |
| | TOFRANIL-PM |
| | AVENTYL |
| | NORTRIPTYLINE HCL |
| | PAMELOR |
| | DESYREL |
| | TRAZODONE HCL |
| | VIVACTIL |
| | MIRTAZAPINE |
| | REMERON |
| | REMERON SOLTAB |
| | WELLBUTRIN |
| | WELLBUTRIN SR |
| | CELEXA |
| | CITALOPRAM HBR |
| | SARAFEM |
| | SELFEMRA |
| | FLUVOXAMINE MAL |
| | BUPROPION HCL |
| | BUPROPION HCL SR |
| | BUPROPION HCL SR |
| | BUPROPION HCL XL |
| | PROZAC WEEKLY |
| | FLUOXETINE HCL |
| | PAROXETINE HCL ER |
| | PAXIL CR |
| | LEXAPRO |
| | ENDEP |
| | LUDIOMIL |
| | WELLBUTRIN XL |
| | PEXEVA |
| | SERTRALINE HCL |
| | VENLAFAXINE HCL |
| | PRISTIQ |

| Market | Product |
|---|---|
| APS | ZYPREXA |
| | ZYPREXA ZYDIS |
| | SYMBYAX |
| | ZYPREXA INTRAMUS |
| | LITHANE |
| | LITHIUM CARB |
| | LITHOBID |
| | LITHONATE |
| | LITHOTABS |
| | DEPAKOTE |
| | DEPAKOTE ER |
| | DEPAKOTE SPRINKL |
| | CHLORPROMAZINE |
| | EQUETRO |
| | ESKALITH |
| | ESKALITH-CR |
| | FLUPHENAZINE DEC |
| | FLUPHENAZINE HCL |
| | LOXAPINE |
| | LOXITANE |
| | LOXITANE C |
| | MELLARIL |
| | MELLARIL-S |
| | MOBAN |
| | NAVANE |
| | PERMITIL |
| | PERPHENAZINE |
| | PROLIXIN |
| | PROLIXIN DECANOATE |
| | PROLIXIN ENANTHATE |
| | SERENTIL |
| | STELAZINE |
| | THIORIDAZINE HCL |
| | THIOTHIXENE |
| | THORAZINE |
| | TRIFLUOPERAZINE |
| | TRILAFON |
| | HALDOL |
| | HALDOL DECANOATE |
| | HALOPERIDOL |
| | HALOPERIDOL DECAN |
| | HALOPERIDOL LACT |
| | RISPERDAL |
| | RISPERDAL M-TAB |
| | RISPERIDONE |
| | SEROQUEL |
| | GEODON |
| | CLOZAPINE |
| | CLOZARIL |
| | ABILIFY |
| | INVEGA |

| Market | Product |
|---|---|
| | STRATTERA |
| | METHYLIN |
| | ADDERALL |
| | DEXEDRINE |
| | METHYLPHENIDATE |
| | RITALIN |
| | RITALIN-SR |
| | CYLERT |
| | DEXEDRINE |
| | METADATE ER |
| | METADATE CD |
| | CONCERTA |
| | DEXTROAMPHETAMI |
| | ADDERALL XR |
| | AMPHETAMINE SALT |
| | DESOXYN |
| | DEXMETHYLPHEN H( |
| | FOCALIN |
| | FOCALIN XR |
| | METHAMPHETAMINE |
| | PEMOLINE |
| | METHYLIN ER |
| | RITALIN LA |
| | DEXTROSTAT |
| | VYVANSE |
| | DAYTRANA |



LUVOX CR
BUDEPRION SR
BUDEPRION XL
GABAPENTIN
NEURONTIN
LYRICA
AMOXAPINE
ASENDIN
MAPROTILINE HCL
PROTRIPTYLINE HCL
SURMONTIL
TRIMIPRAMINE MAL
DESIPRAMINE HCL
DOXEPIN HCL
NORPRAMIN
SINEQUAN
EMSAM



RISPERDAL CONSTA
SEROQUEL XR
LAMICTAL
FAZACLO
LITHIUM CIT

**Exhibit B**

# EXHIBIT B

# SEALED PER COURT ORDER

**Exhibit C**

## Brand Strategy

The brand strategy for Symbyax, with bipolar depression, remains focused on expanding use in the primary care setting and maintaining current prescribers in the psychiatry and account settings.   The message objectives are first to partner with customers to improve the recognition and diagnosis of bipolar depression in their depressed patient population.  Then, when customers recognize bipolar depression, position Symbyax as an appropriate treatment option because of the powerful antidepressant effect that has demonstrated the potential to significantly improve symptoms as early as week one.  When discussing Symbyax, it is important to balance treatment considerations with potential efficacy benefits to meet customer needs.

### Target Patient

Bipolar Depression

## Symbyax Core Message Elements

- Symbyax is a powerful antidepressant for bipolar depression.
  - Provides an enhanced effect on neurotransmitters important in the treatment of depression.
  - Improves symptoms as early as week one.
  - Offers clinically significant remission rates.

## Customer Targeting

Lilly Neuroscience will continue to target current prescribers to maintain or grow sales with Symbyax.  NovaQuest PCP will expand use of Symbyax in primary care by messaging Symbyax in a P2 position with all Cymbalta targets.  In October, it was recommended that NovaQuest utilize a targeted customer approach to achieve sales growth.  The following two customer types should be targeted for incremental customer engagement plan activities:

- Expand the use of Symbyax with **current prescribers** by advancing the comfort with recognition and diagnosis of bipolar depression in their depressed patient population.

- Target a group of **10 Symbyax CATS target physicians that currently do not consider bipolar depression** in their depressed patient population.  Advance their comfort in recognizing bipolar depression and gain clinical experience with Symbyax.

FOR INTERNAL USE ONLY. NOT FOR USE IN DETAILING.

**Exhibit D**

## Key Changes From Previous Sales Aid

You'll be happy to know that not much has changed since October. We have heard from many of you that the new Child 24-hour data and discontinuation data have been compelling information for your physicians. For March 2009, you will notice that we have strengthened Strattera's enduring efficacy story by enhancing these data as well as other areas of the IVA. These additions do not change the strategy or message, but should improve your interactions with your physicians.

The following includes all key changes in your March '09 sales materials:

- **Patient Profiles:** The ADHD patient profiles at the beginning of your child/adolescent and young adult/adult slides and tabs have been updated. The new profiles include more specific ADHD symptoms which outline unique patient needs.
- **Enduring Efficacy Animation:** We enhanced the child/adolescent and young adult/adult "enduring efficacy" data in the IVA by adding animation to bring it to life. Now you can more easily communicate the value that enduring efficacy provides to patients with ADHD.
- **Maintenance Data:** Information on the maintenance treatment of Strattera was first introduced in the November Psych IVA. This data has now been expanded to include not only mean time to relapse, but also percent of patients who relapsed.
- **Enhanced Dosing Information:** Several examples of quantifiable goals have been added to the child/adolescent and adult "Optimizing Treatment" slides and tabs.
- **IVA Functionality:** The IVA functionality has now been updated to allow you click on a graph and expand its view.
- **Enduring Efficacy for Paper Sales Aid:** The child/adolescent "Enduring Efficacy" tab in the paper sales aid has been updated to a text format. This will allow for an easier discussion around the key points of the data presented on this page. *See the "enduringefficacy" section in "Areas of Concern" (AOCs) at the end of the Implementation Guide for further clarification around the child/adolescent "enduring efficacy" data.*
- **New Reprint:** We now have a new reprint available on the discontinuation data presented in your sales aid. The Wernicke reprint will be available in your IVA as well as printed for dissemination to your customers.

FOR INTERNAL USE ONLY. NOT FOR USE IN DETAILING.

**Exhibit E**

<u>Sales Director/Manager Facilitator's Guide</u>

I.    Introduction/Overview–
    a.  Elaine's voicemail – ensure that everyone received the voicemail and understands the context of the call
    b.  As a result of new data analysis, the focus of our promotion and core sales pieces have changed

II.   Implementation Guides
    a.  Imp Guide Overview
        i.  Once the overview is complete and everyone understands the purpose of the call, begin to transition into the Implementation Guide
        ii.  This IVA DOES NOT have any of the painful physical symptom data, it is important to highlight this at the beginning
        iii.  The IVA provides a story around relapse, which will be our promotional focus in the short term
            1.  For the Psych/Account IVA there is also a GAD abbreviated message
            2.  Novaquest and Cardio do not have IVAs – they will receive a four page sales aid via mail on Thursday.  This message is an abbreviated version of the relapse message

III.  Programming Changes
    a.  We have pro-actively decided to make changes to the current Cymbalta promotional slide kits
    b.  The Cymbalta MDD promotional slide kits (core, emotional, and painful physical symptoms) are no longer available for use
    c.  The GAD kit is the only non-pain related kit available for programming
    d.  Representatives should contact speakers for which they have responsibility (see below for further clarification)
    e.  As of Monday, April 6, any MDD program (core, emotional, or painful physical symptoms) will automatically be converted by LLB into a GAD program
    f.  Additionally, speakers will receive a revised GAD kit on the 6th
    g.  The representatives will then have the opportunity to change the program to DPNP, Fibromyalgia, or cancel the program.  Until further notice, only GAD, Fibromyalgia, and DPNP programs may be scheduled
    h.  These limitations are temporary and speaker kit revision is a top priority

IV.   Representative Action Items
    a.  Among the files for download is the representative action communication which provides an action plan for the representatives in addition to a destruction notice
    b.  The key points/timelines are as follows:
        i.  After the call, the representative should download the new IVA, delete the existing IVA, read the implementation guide, and read the sales representative action document

FOR INTERNAL USE ONLY. NOT FOR USE IN DETAILING.

**Exhibit F**

I was referred to you because I feel so sad and anxious, and at work I can't seem to get anything done

Sad

Anxious

Vague aches

Loss of interest

Crying

Cymbalta is indicated for the acute and maintenance treatment of major depressive disorder (MDD).

**Important Safety Information**

- Antidepressants increased the risk of suicidal thinking and behavior (suicidality) in short-term studies in children, adolescents, and young adults with major depressive disorder (MDD) and other psychiatric disorders.
- Patients of all ages started on therapy should be monitored appropriately and observed closely for clinical worsening, suicidality, or unusual changes in behavior.
- Cymbalta is not approved for use in pediatric patients.

See Important Safety Information, including Boxed Warning, on back page.
Full Prescribing Information provided.



Cymbalta® DELAYED RELEASE CAPSULES
duloxetine HCl



Opening dialogue to share with customers

"Doctor, with Cymbalta you've come to expect transparency and proactive communication on topics important to your practice and your patients.  As a result, I want to make you aware that we are in the midst of a proactive assessment of the Cymbalta data used in promotion, to ensure it meets Lilly's commitment to clinical and regulatory standards.

As a result, you will see a change in the patient type I will be describing today, as one of the areas under consideration revolves around Cymbalta's data in painful physical symptoms.  While this process is occurring, I will be sharing data in a patient with major depression who is at risk of relapse.

Over the coming months, I will share with you any changes or additions to our core data for MDD and GAD, so that you can continue to make informed decisions as to how to incorporate Cymbalta into your practice."

**Exhibit G**

## Brand Strategy

In October 2008, we introduced the new Strattera "Stay by their side" campaign as an appeal to physicians who, in market research, told us that they worry about their patients when their symptoms of ADHD are uncontrolled (not just during the daytime hours).  While the tag line "Stay by their side" should not be used as a verbatim with physicians, it intuitively expresses Strattera's benefit: <u>enduring efficacy</u> that gives patients with ADHD the coverage they need in different settings throughout the day.

In 2009, the Strattera strategy remains the same:
1. Remind HCPs about the efficacy and safety of Strattera in treating ADHD symptoms…**Why** they should use Strattera
2. Inform HCPs on **How to** use Strattera (dosing, adequate trial duration, side effects, expectations)

### Target Patient
The ADHD patient who is vulnerable to symptoms of impulsivity and inattention in different settings throughout the day and evening.

### Core Message Elements
- Patients with ADHD are vulnerable to symptoms such as impulsivity and inattention at different times and in different settings
- Strattera provides enduring efficacy in ADHD
- Understanding how to appropriately dose and set expectations is key to success with Strattera

### Key Takeaways
1. **HCPs need to be aware of the efficacy and safety of Strattera in treating ADHD symptoms**

When HCPs think of Strattera, they must remember that Strattera treats symptoms of ADHD.  In particular, they must be reminded of the efficacy of Strattera in treating the inattentive and impulsive symptoms associated with ADHD.  These are often the symptoms that physicians want to treat for a duration longer than just the work or school day.

2. **We need to inform HCPs of multiple strategies to help their patients achieve better outcomes with Strattera.  These are the "How to's".**

We need to continue being open and transparent with HCPs regarding response rates, dosing, gradual onset of action, and potential adverse events in order to help HCPs and their patients achieve a better overall experience with Strattera.  Patients' knowledge of what to expect with Strattera is critical in their achieving a more meaningful experience with the product.  We need to take responsibility for doing more to help patients use Strattera successfully.

**Exhibit H**

## CERTIFICATE OF SERVICE

I, Teresa N. Cavenagh, hereby certify that a true and correct copy of the foregoing

Complaint has been served this 1st day of May, 2009, by certified mail, return receipt requested

unless otherwise noted upon the following:

## SERVICE LIST

| | |
|---|---|
| Eric H. Holder, Jr., Attorney General<br>United States Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Washington, DC 20430-0001 | Laurie Magid, United States Attorney<br>c/o Virginia Gibson, Chief, Civil Division<br>United States Attorney's Office<br>615 Chestnut Street, Suite 1250<br>Philadelphia, PA 19106-4476<br>**(Via Hand Delivery)** |
| Office of the Attorney General, California<br>Jerry Brown<br>1300 I Street, Suite 1740<br>Sacramento, California 95814 | Office of the Attorney General, Hawaii<br>Mark J. Bennett<br>425 Queen Street<br>Honolulu, Hawaii 96813 |
| Office of the Attorney General<br>Medicaid Fraud Control Unit<br>Michael L. Parrish, Director<br>333 Queen Street, 10th Floor .<br>Honolulu, Hawaii 96813 | Office of the Attorney General<br>Medicaid Fraud Control Unit<br>W. Rick Copeland, Director<br>6330 Hwy. 290 East<br>Suite 250<br>Austin, Texas 78723 |
| Delaware Office of the Attorney General<br>Joseph R. Biden, III<br>Carvel State Office Building<br>820 N. French Street<br>Wilmington, DE 19801 | Linda Singer<br>Office of the Attorney General for the<br> District of Columbia<br>Attention: Stephane Latour<br> Chief, Civil Enforcement Section<br>441 4th Street, NW, Suite 450 North<br>Washington, DC 20001 |

| | |
|---|---|
| Office of the Attorney General, Tennessee<br>Robert E. Cooper, Jr.<br>P. O. Box 20207<br>Nashville, Tennessee 37202-0207 | Office of the Attorney General, Texas<br>Greg Abbott<br>Attorney General<br>Capitol Station<br>P. O. Box 12548<br>Austin, Texas 78711-2548 |
| Office of the Attorney General, Illinois<br>Lisa Madigan<br>James R. Thompson Center<br>100 W. Randolph Street<br>Chicago, Illinois 60601 | Office of the Inspector General<br>District of Columbia<br>Susan Kennedy, Director<br>Medicaid Fraud Control Unit<br>717 14th Street NW, 5th Floor<br>Washington, DC 20005 |
| Office of the Attorney General, California<br>Mark Geiger, Director<br>Bureau of Medi-Cal Fraud<br>1425 River Park Drive, Suite 300<br>Sacramento, California 95815 | Office of the Attorney General, Virginia<br>Bill Mims<br>Randal L. Clouse, Director<br>Medicaid Fraud Control Unit<br>900 E. Main Street, 5th Floor<br>Richmond, Virginia 23219 |
| Office of the Attorney General,<br>Massachusetts<br>Martha Coakley<br>Christopher Walsh, Director<br>Medicaid Fraud Control Unit<br>1 Ashburton Place<br>Boston, Massachusetts 02108 | Office of Attorney General<br>State of Florida<br>Bill McCollum<br>The Capitol<br>PL-01<br>Tallahassee, FL 32399-1050 |
| Office of Attorney General, Nevada<br>Catherine Cortez Masto<br>100 North Carson Street<br>Carson City, Nevada 89701-4717 | Office of the Attorney General,<br>New Hampshire<br>Kelly A. Ayotte<br>33 Capitol Street<br>Concord, NH 03301 |
| Carlotta R. Hivoral<br>Deputy Attorney General<br>Bureau of Medi-Cal Fraud and Elder Abuse<br>1455 Frazee Road, Suite 315<br>San Diego, CA 92108-4304 | Office of the Attorney General, New York<br>Andrew M. Cuomo<br>The Capitol<br>Albany, NY 12224-0341 |

| | |
|---|---|
| Office of the Attorney General<br>Medicaid Fraud Control Unit of Florida<br>David Lewis, Director<br>107 West Gaines Street<br>The Capitol – PL-01<br>Tallahassee, FL  32399-1050 | Office of the Attorney General, Montana<br>Steve Bullock<br>Justice Building<br>215 N. Sanders<br>Helena, MT  59620-1401 |
| Charles Richards<br>Director, MFCU<br>Georgia State Healthcare Fraud Control Unit<br>2100 East Exchange Place<br>Building 1, Suite 200<br>Tucker, GA  30084 | Office of the Attorney General, Georgia<br>Thurbert E. Baker<br>40 Capitol Square, SW<br>Atlanta, GA  30334 |
| Office of the Attorney General, Michigan<br>Mike Cox<br>G. Mennen Williams Building, 7th Floor<br>525 W. Ottawa Street<br>P. O. Box 30212<br>Lansing, MI  48909 | Office of the Attorney General<br>Greg Zoeller<br>Indiana Government Center South<br>5th Floor<br>402 West Washington Street<br>Indianapolis, IN  46204 |
| Honorable J. B. Van Hollen<br>Attorney General of Wisconsin<br>Office of the Attorney General<br>State Capitol<br>P. O. Box 7857<br>Suite 114 East<br>Madison, WI  53707-7857 | Office of the Attorney General,<br>New Mexico<br>Gary King<br>P. O. Drawer 1508<br>Santa Fe, New Mexico  87504-1508 |
| Honorable Patrick C. Lynch<br>Attorney General of Rhode Island<br>Office of the Attorney General<br>150 S. Main Street<br>Providence, RI  02903 | Honorable W. A. Drew Edmondson<br>Attorney General of Oklahoma<br>Office of the Attorney General<br>State Capitol<br>2300 North Lincoln Blvd.<br>Room 112<br>Oklahoma City, OK  73105 |

3

| | |
|---|---|
| Honorable Anne Milgram<br>Attorney General<br>State of New Jersey<br>Richard J. Hughes Justice Complex (HJC)<br>8th Floor, West Wing<br>25 Market Street<br>Trenton, NJ  08625-0080 | Office of Attorney General<br>District of Columbia<br>Peter Nickles<br>John A. Wilson Building<br>1350 PA Ave., NW<br>Suite 409<br>Washington, DC  2009 |

Teresa N. Cavenagh

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: John Doe

Address of Defendant: Lilly Corporate Center, Indianapolis, Indiana

Place of Accident, Incident or Transaction: California and across the United States

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ. P. 7.1 (a))       Yes ☐ No ☒

Does this case involve multidistrict litigation possibilities?       Yes ☐ No ☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

   Yes ☐ No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?

   Yes ☐ No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?

   Yes ☐ No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?

   Yes ☐ No ☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
    (Please specify)
    False Claims Act 31 U.S.C. § 3729

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, Michael M. Mustokoff _____ , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: May 1, 2009        Michael M. Mustokoff                    15674

                         Attorney-at-Law                   Attorney I.D.#

NOTE:   A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: May 1, 2009        _____              15674

CIV. 609 (6/08)

American LegalNet, Inc.
www.FormsWorkflow.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## <u>CASE MANAGEMENT TRACK DESIGNATION FORM</u>

|  |  |  |
|---|---|---|
| United States Ex Rel. John Doe | : | CIVIL ACTION |
|  | : |  |
| v. | : |  |
|  | : | NO. |
| Eli Lilly & Company | : |  |
|  | : |  |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                 ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                                    ( X )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( )

| | | |
|---|---|---|
| May 1, 2009 | Michael M. Mustokoff | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| | | |
| 215.979.1810 | 215.689-3607 | mmustokoff@duanemorris.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

American LegalNet, Inc.
www.USCourtForms.com